# EXHIBIT A

RECEIVED & FILED
2018 OCT -3 A 11: 06
MASS TORT CIV'L DIV
MIDDLESEX VICINAGE

SZAFERMAN LAKIND BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Road, Suite 200
Lawrence Township, NJ 08648
(609) 275-0400
By:    Robert E. Lytle (NJ ID No. 046331990)

SIMON GREENSTONE PANATIER, P.C.
750 Third Avenue, Suite 976
New York, New York 10017
(212) 572-0774
By:    Joseph Mandia (NJ ID No. 016652008)
       Leah Kagan (NJ ID No. 013602009)

Attorneys for Plaintiffs

| | |
|---|---|
| **WILLIAM ANDERTON** and **MARGIE ANDERTON**, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION-MIDDLESEX COUNTY |
| Plaintiffs, | DOCKET NO. _____ |
| v. | MID-L- 05866 -18 |
| | CIVIL ACTION ASBESTOS LITIGATION |
| **3M COMPANY** a/k/a MINNESOTA MINING & MANUFACTURING COMPANY; | |
| **BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.); | ORIGINAL COMPLAINT AND DEMAND FOR TRIAL BY JURY |
| **BRENNTAG SPECIALTIES, INC.** f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.); | |
| **CHEVRON PHILLIPS CHEMICAL COMPANY LP** d/b/a DRILLING SPECIALTIES COMPANY; | |
| **COLGATE-PALMOLIVE COMPANY** (sued individually and as successor-in-interest to THE MENNEN COMPANY); | |

**CONOCOPHILLIPS COMPANY** (sued as successor-by-merger to PHILLIPS PETROLEUM COMPANY);

**CONOPCO, INC.** d/b/a UNILEVER HOME & PERSONAL CARE USA (sued individually and as successor-in-interest to ELIZABETH ARDEN, INC.);

**CYPRUS AMAX MINERALS COMPANY** (sued individually, doing business as, and as successor to AMERICAN TALC COMPANY, METROPOLITAN TALC CO. INC. and CHARLES MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC COMPANY);

**ELI LILLY AND COMPANY** (sued individually and as successor-in-interest to ELIZABETH ARDEN, INC.);

**IMERYS TALC AMERICA, INC.** (sued individually and as successor-in-interest to LUZENAC AMERICA, INC. successor-in-interest to CYPRUS INDUSTRIAL MINERALS COMPANY and WINDSOR MINERALS, INC. and METROPOLITAN TALC CO. INC.);

**JOHNSON & JOHNSON;**

**JOHNSON & JOHNSON CONSUMER INC.,** a subsidiary of JOHNSON & JOHNSON;

**THE LINCOLN ELECTRIC COMPANY;**

**MONTELLO, INC.;**

**PFIZER INC.;**

**PHILLIPS 66 COMPANY;**

**REVLON CONSUMER PRODUCTS CORPORATION;**

**REVLON, INC.;**

-2-

2786569.1

**UNILEVER HOME & PERSONAL CARE
USA** (sued individually and as successor-in-
interest to ELIZABETH ARDEN, INC.);

**UNILEVER UNITED STATES, INC.** (sued
individually and as successor-in-interest to
CHESEBROUGH MANUFACTURING
COMPANY a/k/a CHESEBROUGH-PONDS);

**UNION CARBIDE CORPORATION;**

**WHITTAKER CLARK & DANIELS, INC.;**

**JOHN DOE CORPORATIONS 1-50**
(fictitious),

    Defendants.

    Plaintiffs, by way of Complaint against Defendants, upon information and belief allege as

follows:

## PARTIES – PLAINTIFFS

    1.    Plaintiffs, WILLIAM ANDERTON and MARGIE ANDERTON, reside at 160

Lazy Acres Road, Malvern, Arkansas 72104.

    2.    From approximately 1956 to 1959, Plaintiff WILLIAM ANDERTON was

exposed to asbestos through his personal use of Johnson's Baby Powder, and from

approximately 1960 to 1981 through his personal use of Mennen talcum powder. From

approximately 1960 to 2018, Plaintiff WILLIAM ANDERTON was exposed to asbestos

through his wife, Plaintiff MARGIE ANDERTON's, regular and frequent use of White

Shoulders talcum powder. Plaintiff WILLIAM ANDERTON's regular and frequent use of

Johnson's Baby Powder and Mennen talcum powder, and his wife's regular and frequent use of

White Shoulders talcum powder generated asbestos-containing dust and exposed Plaintiff

WILLIAM ANDERTON to respirable asbestos fibers.

-3-

In approximately 1960, Plaintiff WILLIAM ANDERTON was exposed to asbestos while employed as a welder's helper for Ewing Welding in Sheridan, Arkansas. During this time period, he worked around asbestos-containing Lincoln Welding Rods.

In approximately 1965, Plaintiff WILLIAM ANDERTON was exposed to asbestos while employed as a laborer at Baroid Company in Magnet Cove, Arkansas. Plaintiff's job duties included, but were not limited to, filling 50 pound bags with powdered drilling mud additives, and unloading 50 pound and 100 pound bags of raw materials for the mud drilling additives from rail cars and placing them on pallets. During this time period, he worked with and around the following companies' asbestos, and/or asbestos-containing products, which includes, but is not limited to: Flosal Drilling Mud, Montello Drilling Mud, Visbestos Drilling Mud, Chevron Phillips Chemical Company LP d/b/a Drilling Specialties Company, ConocoPhillips Company (sued as successor-by-merger to Phillips Petroleum Company), Phillips 66 Company, Union Carbide Corporation. He was also exposed to asbestos fibers supplied by Montello, Inc., and used defective masks and/or respirators made by 3M Company a/k/a Minnesota Mining & Manufacturing Company that also resulted in his asbestos exposure.

As a direct and proximate result of the above exposures, Plaintiff WILLIAM ANDERTON contracted mesothelioma and has suffered, and continues to suffer from other various diverse injuries and attendant complications.

3.   Plaintiffs bring this action on behalf of themselves.

4.   Plaintiffs claim damages as a result of:

_x_  loss of consortium (per quod)

_x_  loss of services

_x_  economic loss

-4-

<u>x</u>   pain and suffering

5.      Reference herein to "Plaintiff" and "Plaintiffs" are references to all the persons set forth above as is syntactically and contextually correct.

## PARTIES - DEFENDANTS

1.      The aforementioned Defendants are corporations organized under the laws of New Jersey and/or various states of the United States of America that were and are doing business in the State of New Jersey.   The aforementioned Defendants mined, milled, designed, manufactured, sold, supplied, purchased, and/or marketed asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos fiber of various kinds and grades to which Plaintiff WILLIAM ANDERTON was exposed.

## NON-RESPIRATOR DEFENDANTS

2.      Defendants **BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), **BRENNTAG SPECIALTIES, INC.** f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), **CHEVRON PHILLIPS CHEMICAL COMPANY LP** d/b/a DRILLING SPECIALTIES COMPANY, **COLGATE-PALMOLIVE COMPANY** (sued individually and as successor-in-interest to THE MENNEN COMPANY), **CONOCOPHILLIPS COMPANY** (sued as successor-by-merger to PHILLIPS PETROLEUM COMPANY), **CONOPCO, INC.** d/b/a UNILEVER HOME & PERSONAL CARE USA (sued individually and as successor-in-interest to ELIZABETH ARDEN, INC.), **CYPRUS AMAX**

-5-

**MINERALS COMPANY** (sued individually, doing business as, and as successor to AMERICAN TALC COMPANY, METROPOLITAN TALC CO. INC. and CHARLES MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC COMPANY), **ELI LILLY AND COMPANY** (sued individually and as successor-in-interest to ELIZABETH ARDEN, INC.), **IMERYS TALC AMERICA, INC.** (sued individually and as successor-in-interest to LUZENAC AMERICA, INC. successor-in-interest to CYPRUS INDUSTRIAL MINERALS COMPANY and WINDSOR MINERALS, INC. and METROPOLITAN TALC CO. INC.), **JOHNSON & JOHNSON, JOHNSON & JOHNSON CONSUMER INC.**, a subsidiary of JOHNSON & JOHNSON, **THE LINCOLN ELECTRIC COMPANY, MONTELLO, INC., PFIZER INC., PHILLIPS 66 COMPANY, REVLON CONSUMER PRODUCTS CORPORATION, REVLON, INC., UNILEVER HOME & PERSONAL CARE USA** (sued individually and as successor-in-interest to ELIZABETH ARDEN, INC.), **UNILEVER UNITED STATES, INC.** (sued individually and as successor-in-interest to CHESEBROUGH MANUFACTURING COMPANY a/k/a CHESEBROUGH-PONDS), **UNION CARBIDE CORPORATION**, and **WHITTAKER CLARK & DANIELS, INC.** were designers, manufacturers, suppliers or distributors of asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos fiber of various kinds and grades to which Plaintiff WILLIAM ANDERTON was exposed and utilized.

-6-

## RESPIRATOR DEFENDANTS

3.   At all relevant times, Defendant **3M COMPANY** a/k/a MINNESOTA MINING & MANUFACTURING COMPANY designed, marketed, manufactured, distributed, supplied, sold, and made misrepresentations regarding its defective masks and/or respirators, and/or other breathing equipment, which were used by Plaintiff WILLIAM ANDERTON, and which caused Plaintiff to be exposed to asbestos.

## FICTITIOUS PARTIES

4.   Defendants, **JOHN DOE CORPORATIONS 1-50**, are the fictitious names of corporations, partnerships, or other business entities or organizations whose identities are not presently known, and who are the alter egos of or are otherwise responsible for the conduct or liability of those who mined, milled, manufactured, sold, supplied, purchased, marketed, installed and/or removed asbestos-containing products, and/or equipment requiring or calling for the use of asbestos and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos fiber of various kinds and grades, and/or defective masks and/or respirators, and/or other breathing equipment to which Plaintiff WILLIAM ANDERTON was exposed or utilized.

5.   The aforementioned Defendants, including but not limited to Non-Respirator Defendants, and Respirator Defendant, conduct business in the State of New Jersey, and certain Defendants reside or maintain their principal offices in the State of New Jersey.

## FIRST COUNT
## (NON-RESPIRATOR DEFENDANTS)

1.   Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

-7-

2.     Defendants, at all times material hereto, acted through their respective officers, employees and agents, who in turn were acting within the scope of their authority and employment in furtherance of the business of Defendants.

3.     Defendants were engaged, directly or indirectly, in the mining, milling, designing, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, or distributing of asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing products, and/or equipment requiring or calling for the use of asbestos and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos fiber of various kinds and grades (hereinafter collectively referred to as "Defendants' Products").

4.     Defendants, directly or indirectly, caused Defendants' Products to be sold to or used by Plaintiff WILLIAM ANDERTON and his wife in their personal residences, and during Plaintiff's occupations as a welder's helper and laborer.

5.     Plaintiff WILLIAM ANDERTON, during his personal use, through his wife's personal use, and during his occupations as a welder's helper and laborer, was exposed to and came in contact with Defendants' Products.  Plaintiff WILLIAM ANDERTON inhaled or ingested the asbestos dust and fibers emanating from Defendants' Products.

6.     As a direct and proximate result of Plaintiff WILLIAM ANDERTON's inhalation and ingestion of dust particles and fibers from Defendants' Products Plaintiff WILLIAM ANDERTON developed permanent and disabling personal injuries.

7.     During the time that Defendants mined, milled, designed, manufactured, produced, processed, compounded, converted, sold, merchandised, distributed, and supplied Defendants'

Products, Defendants knew, or in the exercise of reasonable care should have known, that Defendants' Products were defective, ultrahazardous, dangerous and otherwise highly harmful to Plaintiff WILLIAM ANDERTON.

8.    Defendants knew, or in the exercise of reasonable care should have known, that the use of Defendants' Products would cause asbestos dust and fibers to be released into the air and would create dangerous and unreasonable risk of injury to the lungs, respiratory systems, larynx, stomach and other bodily organs to of users of Defendants' Products and to others breathing that air and coming into contact with that dust.

9.    Plaintiff WILLIAM ANDERTON did not know the nature and extent of the injury that would result from contact with and exposure to Defendants' Products, or from the inhalation or ingestion of the asbestos dust and fibers.

10.    Defendants knew, or in the exercise of reasonable care should have known, that Plaintiff WILLIAM ANDERTON would come into contact with and be exposed to Defendants' Products and would inhale or ingest asbestos dust and fibers as a result of the ordinary and foreseeable use of Defendants' Products by Plaintiff WILLIAM ANDERTON and his wife.

11.    Despite the facts as set forth above, Defendants negligently, recklessly and intentionally:

(a)    mined, milled, designed, manufactured, produced, processed, compounded, converted, sold, supplied, merchandised, distributed or otherwise placed in the stream of commerce Defendants' Products which Defendants knew, or in the exercise of reasonable care should have known, were defective, dangerous, ultrahazardous and otherwise unreasonably harmful to Plaintiff WILLIAM ANDERTON;

-9-

2786569.1

(b)     failed to take reasonable precautions or exercise reasonable care to warn Plaintiff WILLIAM ANDERTON and his wife adequately of the risks, dangers and harm to which Plaintiff would be exposed by exposure to, contact with, use and handling of Defendants' Products, or by inhalation or ingestion of the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products;

(c)     failed to provide information or reasonably safe and sufficient safeguards, wearing apparel, proper equipment and appliances necessary to protect Plaintiff WILLIAM ANDERTON from being injured, poisoned, disabled, killed or otherwise harmed by using, handling, coming into contact with and being exposed to Defendants' Products, or by inhalation or ingestion of the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products;

(d)     failed to package Defendants' Products in a manner that would assure that Plaintiff WILLIAM ANDERTON would not come into contact with or be exposed to the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products;

(e)     failed to advise Plaintiff WILLIAM ANDERTON and his wife of the necessity to adopt and enforce a safe, sufficient and proper method and plan of using, handling, coming into contact with and being exposed to Defendants' Products so that Plaintiff would not inhale or ingest the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products;

(f)     ignored and/or suppressed medical and scientific information, studies, tests, data and literature which Defendants acquired during the course of their normal business activities concerning the risk of asbestosis, scarred lungs, cancer, mesothelioma, respiratory disorders and

-10-

other illnesses and diseases to individuals such as Plaintiff WILLIAM ANDERTON, and other persons similarly situated, who were exposed to Defendants' Products;

(g)    disregarded medical and scientific information, studies, tests, data and literature concerning the causal relationship between the inhalation or ingestion of asbestos dust and fibers, and such diseases as asbestosis, mesothelioma, scarred lungs, cancer, respiratory disorders and other illnesses and diseases;

(h)    exposed and continued to expose Plaintiff WILLIAM ANDERTON and other persons similarly situated to the risk of developing asbestosis, mesothelioma, scarred lungs, cancer and other illnesses, all of which risks Defendants knew, or in the exercise of reasonable care should have known, were consequences of exposure to asbestos dust and fibers;

(i)    failed to seek substitute materials in lieu of the use of asbestos;

(j)    failed to advise Plaintiff WILLIAM ANDERTON who Defendants knew, or in the exercise of reasonable care should have known, had been exposed to, inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products; to cease further uncontrolled or unprotected exposure to Defendants' Products and the inhalation or ingestion of asbestos dust and fibers and all other kinds of smoke, dusts and fumes; to be examined by competent medical doctors to determine the nature and extent of any and all diseases caused by inhalation or ingestion of asbestos dust and fibers; and to receive medical care and treatment for such diseases.

12.    Defendants otherwise acted negligently, recklessly and with intentional disregard for the welfare of Plaintiff WILLIAM ANDERTON in the mining, milling, designing, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing, or otherwise placing in the stream of commerce Defendants' Products.

-11-

13.     As a direct and proximate result of the acts and omissions of Defendants, Plaintiff WILLIAM ANDERTON was exposed to and came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products.  Plaintiff WILLIAM ANDERTON developed mesothelioma as a direct and proximate result of said exposure to Defendants' Products.   Plaintiff WILLIAM ANDERTON has and continues to endure severe pain and suffering and mental anguish, has been required to expend great sums of money for medical care and treatment related thereto, has been prevented from pursuing his normal activities and employment and has been deprived of his ordinary pursuits and enjoyments of life.  Plaintiff WILLIAM ANDERTON has suffered lost wages and earnings and severe pecuniary loss, all to Plaintiffs' WILLIAM ANDERTON's and MARGIE ANDERTON's loss.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally, or in the alternative, for compensatory damages, punitive damages, pre- and post-judgment interest, and costs of suit as provided by law.

## SECOND COUNT
## (NON-RESPIRATOR DEFENDANTS)

1.     Plaintiffs reiterate the facts and contentions as set forth above, and repeat them herein.

2.     Defendants expressly or impliedly warranted that Defendants' Products, which they mined, milled, designed, manufactured, produced, compounded, converted, processed, sold, supplied, merchandised, distributed or otherwise placed in the stream of commerce were merchantable, reasonably fit for use and safe for their intended purposes.

-12-

3.     Defendants breached said warranties in that Defendants' Products were defective, ultrahazardous, dangerous, unfit for use, not merchantable and not safe for their intended, ordinary and foreseeable use and purpose.

4.     As a direct and proximate result of Defendants' breach of warranties, Plaintiff WILLIAM ANDERTON was exposed to asbestos and came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products.  Plaintiff WILLIAM ANDERTON has suffered the injuries, expenses and losses, including severe pain and suffering and mental anguish, as alleged in prior counts of this Complaint.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally, or in the alternative, for compensatory damages, punitive damages, pre- and post-judgment interest, and costs of suit as provided by law.

## THIRD COUNT
## (NON-RESPIRATOR DEFENDANTS)

1.     Plaintiffs reiterate the facts and contentions as set forth above, and repeat them herein.

2.     Defendants failed to disclose and intentionally and negligently misrepresented to Plaintiff WILLIAM ANDERTON and his wife the health risks created by the ordinary use of Defendants' Products.

3.     Plaintiff WILLIAM ANDERTON and his wife relied upon said representations. Plaintiff WILLIAM ANDERTON's and his wife's reliance was foreseeable to Defendants.

4.     As a result of Defendants' conduct, Plaintiff WILLIAM ANDERTON came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers from

-13-

Defendants' Products. Plaintiff WILLIAM ANDERTON has suffered the injuries, expenses and losses, including severe pain and suffering and mental anguish, as alleged in prior counts of this Complaint.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally, or in the alternative, for compensatory damages, punitive damages, pre- and post-judgment interest, and costs of suit as provided by law.

## FOURTH COUNT
## (NON-RESPIRATOR DEFENDANTS)

1.     Plaintiffs reiterate the facts and contentions as set forth above, and repeat them herein.

2.     Defendants are <u>strictly liable</u> to Plaintiffs by reason of the following:

(a)     Defendants were engaged in the business of being miners, millers, designers, manufacturers, producers, processors, sellers, suppliers, and distributors of Defendants' Products;

(b)     Defendants knew or had reason to know that Plaintiff WILLIAM ANDERTON, his wife, and other persons similarly situated would be ultimate users or consumers of Defendants' Products or would be exposed to Defendants' Products;

(c)     Defendants sold or otherwise placed Defendants' Products into the stream of commerce in a defective condition, unreasonably dangerous to Plaintiff WILLIAM ANDERTON and other persons similarly situated;

(d)     Throughout the many years that Plaintiff WILLIAM ANDERTON and other similarly situated persons were exposed to and used Defendants' Products, said products reached the users and consumers without substantial change in the condition in which they were sold;

(e)     The ordinary and foreseeable use of Defendants' Products constituted a dangerous and ultrahazardous activity and created an unreasonable risk of injury to users and bystanders;

(f)     Defendants' Products were defective in that they deviated from the design specifications and/or standards set forth by the manufacturer, were incapable of being made safe for their ordinary and intended use and purpose due to their defective design, and Defendants failed to give any warnings or instructions, or failed to give adequate or sufficient warnings or instructions about the risks, dangers and harm associated with the use of Defendants' Products.

3.     As a consequence of the defective condition of Defendants' Products and their failure to warn, Plaintiff WILLIAM ANDERTON inhaled or ingested asbestos dust and fibers during ordinary and foreseeable use of Defendants' Products.  Plaintiff WILLIAM ANDERTON has suffered the injuries, expenses and losses, including severe pain and suffering and mental anguish, as alleged in prior counts of this Complaint.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative, for compensatory damages, punitive damages, pre- and post-judgment interest, and costs of suit as provided by law.

**FIFTH COUNT**
**(Product Liability Act Claim Against Brenntag North America, Inc. (sued individually and as successor-in-interest to Mineral Pigment Solutions, Inc. and as successor-in-interest to Whittaker Clark & Daniels, Inc.), Brenntag Specialties, Inc. f/k/a Mineral Pigment Solutions, Inc. (sued individually and as successor-in-interest to Whittaker Clark & Daniels, Inc.), Colgate-Palmolive Company (sued individually and as successor-in-interest to The Mennen Company), Conopco, Inc. d/b/a Unilever Home & Personal Care USA (sued individually and as successor-in-interest to Elizabeth Arden, Inc.), Cyprus Amax Minerals Company (sued individually, doing business as, and as successor to American Talc Company, Metropolitan Talc Co. Inc. and Charles Mathieu Inc. and Sierra Talc Company and United Talc Company), Eli Lilly and Company (sued individually and as successor-in-interest to Elizabeth Arden, Inc.), Imerys Talc America, Inc. (sued individually and as successor-in-interest to Luzenac America, Inc. successor-in-interest to Cyprus Industrial Minerals Company and Windsor Minerals, Inc. and Metropolitan Talc Co. Inc.), Johnson & Johnson, Johnson & Johnson Consumer Inc., a subsidiary of Johnson & Johnson; Pfizer Inc., Revlon Consumer Products Corporation, Revlon, Inc.,**

-15-

**Unilever Home & Personal Care USA (sued individually and as successor-in-interest to Elizabeth Arden, Inc.), Unilever United States, Inc. (sued individually and as successor-in-interest to Chesebrough Manufacturing Company a/k/a Chesebrough-Ponds), and Whittaker Clark & Daniels, Inc.)**

1.      Plaintiffs reiterate the facts and contentions as set forth above, and repeat them herein.

2.      Defendants are <u>strictly liable</u> to Plaintiffs by reason of the following:

(a)      Defendants were engaged in the business of being miners, millers, designers, manufacturers, producers, processors, sellers, suppliers, and distributors of Defendants' Products;

(b)      Defendants knew or had reason to know that Plaintiff WILLIAM ANDERTON and other persons similarly situated would be ultimate users or consumers of Defendants' Products or would be exposed to Defendants' Products;

(c)      Defendants sold or otherwise placed Defendants' Products into the stream of commerce in a defective condition, unreasonably dangerous to Plaintiff WILLIAM ANDERTON and other persons similarly situated;

(d)      Throughout the many years that Plaintiff WILLIAM ANDERTON and other similarly situated persons were exposed to and used Defendants' Products, said products reached the users and consumers without substantial change in the condition in which they were sold;

(e)      The ordinary and foreseeable use of Defendants' Products constituted a dangerous and ultra-hazardous activity and created an unreasonable risk of injury to users and bystanders;

(f)      Defendants' Products were defective in that they deviated from the design specifications and/or standards set forth by the manufacturer, were incapable of being made safe for their ordinary and intended use and purpose due to their defective design, and Defendants

-16-

2786569.1

failed to give any warnings or instructions, or failed to give adequate or sufficient warnings or instructions about the risks, dangers and harm associated with the use of Defendants' Products.

3.     As a consequence of the defective condition of Defendants' Products and their failure to warn, Plaintiff WILLIAM ANDERTON inhaled or ingested asbestos dust and fibers during ordinary and foreseeable use of Defendants' Products. Plaintiff WILLIAM ANDERTON has suffered the injuries, expenses and losses, including severe pain and suffering and mental anguish, as alleged in prior counts of this Complaint.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative, for compensatory damages, punitive damages, pre- and post-judgment interest, and costs of suit as provided by law.

## SIXTH COUNT
## (NON-RESPIRATOR DEFENDANTS)

1.     Plaintiffs reiterate the facts and contentions as set forth above, and repeat them herein.

2.     Defendants acted in concert with each other and with other members of the industry through express agreement, implicit agreement, imitative behavior and conscious parallel behavior:

(i)     to withhold from users of Defendants' Products, and from persons who Defendants knew or should have known would be exposed to Defendants' Products, information regarding the health risks of breathing or ingesting asbestos dust and fibers;

(ii)     to eliminate or prevent development of adequate procedures and tests relating to the health hazards of exposure to asbestos fibers and dust; and

(iii)     to assure that Defendants' Products became widely used in industries such as personal hygiene and similar such industries.

-17-

3.     Defendants knew that their activities were violative of common law standards of care and that their withholding of information, failure to develop tests and procedures and promotion of widespread use of Defendants' Products would expose persons such as Plaintiff WILLIAM ANDERTON to unreasonable risk of bodily injury.

4.     Defendants nevertheless gave substantial assistance and encouragement to each other and to other members of the industry and assisted each other and other members of the industry in: withholding information regarding the dangers of asbestos; failing to develop tests and procedures to assure that users of asbestos would not be subjected to risk of injury; and promoting widespread use of products which Defendants knew would expose Plaintiff WILLIAM ANDERTON to unreasonable risk of bodily injury.

5.     As a direct and proximate consequence of the concerted actions of Defendants and other members of the industry, Plaintiff WILLIAM ANDERTON was exposed to and came in contact with Defendants' Products, and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products.   Plaintiff WILLIAM ANDERTON was caused to suffer the injuries, expenses and losses, including severe pain and suffering and mental anguish, as alleged in prior counts of this Complaint.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally, or in the alternative, for compensatory damages, punitive damages, pre- and post-judgement interest, and costs of suit as provided by law.

## SEVENTH COUNT

1.     Plaintiffs reiterate the facts and contentions as set forth above, and repeat them herein.

-18-

2786569.1

2.     The Defendants constitute all known non-remote producers, designers, manufacturers, suppliers, and distributors of the asbestos-containing products which could have caused Plaintiff WILLIAM ANDERTON's injuries.

3.     Each of the Defendants, whether acting individually or in concert with others, violated a duty of care owed to Plaintiff WILLIAM ANDERTON, or otherwise engaged in culpable activity against Plaintiff WILLIAM ANDERTON.  The acts and omissions of at least one of the Defendants caused Plaintiff WILLIAM ANDERTON to suffer the injuries, losses and expenses alleged in prior counts of this Complaint.

4.     Plaintiff WILLIAM ANDERTON in no respect can be blamed should he be unable to establish which of Defendants' Products caused the injuries complained of herein.

5.     The burden of proof in this matter thus should shift to Defendants to demonstrate that their respective conduct and their respective products could not have caused Plaintiff WILLIAM ANDERTON's injuries, and, failing such proof, Defendants should be held jointly, severally, or alternatively liable for Plaintiff WILLIAM ANDERTON's injuries.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally, or in the alternative, for compensatory damages, punitive damages, pre- and post-judgment interest, and costs of suit as provided by law.

## EIGHTH COUNT
## FRAUD - MISREPRESENTATION AND CONCEALMENT
### (Respirator Defendant 3M COMPANY a/k/a MINNESOTA MINING & MANUFACTURING COMPANY only)

1.     Plaintiffs reiterate the facts and contentions as set forth above, and repeat them herein.

-19-

## Relevant National Occupational Health Standards

2.     During the relevant time, there existed occupational safety standards supposedly designed to protect individuals working in or around industrial operations.

3.     However, these standards were undermined and/or defeated by 3M COMPANY a/k/a MINNESOTA MINING & MANUFACTURING COMPANY (hereinafter referred to as the "Respirator Defendant") who often participated in the development of the standards, was aware of the deficiencies of the standards in its masks and/or respirators, and in order to promote its equipment, provided misinformation about the effectiveness and applicability of its products in the workplace.

4.     In 1955, the Bureau of Mines published criteria for approving respirators. This standard included testing methods for respirators to be used by workers exposed to respirable silica dust. Over the years, this standard was updated by the Bureau of Mines and NIOSH. As set forth, the Respirator Defendant was fully aware that the approval tests only evaluated loading by mass, did not adequately evaluate the true efficiency of the filter to small sub-micron particles, the effects of filter degradation, or the fit of the respirator.

5.     In 1959, national concordance standards were published to help provide guidance for the selection and application of respiratory protection. This standard relies on the respirator manufacturer to provide information on the usage and limitations of its equipment; however, the information provided by the Respirator Defendant was misleading and inadequate for the proper selection, application and protection of the worker.

6.     In 1971, the Occupational Safety and Health Administration established federal workplace standards. The masks and/or respirator manufacturer necessarily plays a vital role in the proper application of these standards, and can undermine their effectiveness and contribute to

-20-

over-exposure. Specifically, Section 1910.134 requires the user's employer to perform a certain function. First, the employer must establish a written respiratory protection program. To do so, the employer relies on the masks and/or respirator manufacturer for much of this information.

7.     In this case, the Respirator Defendant was aware of approval, fitting, leakage, filter penetration or concentration usage deficiencies that it did not disclose to the employers and users.

8.     Section 1910.134 also requires employers to conduct dust monitoring to select the proper masks and/or respirators. However, the Respirator Defendant represented that its masks and/or respirators were completely protective, misrepresented the contaminants they would protect against and did not provide an upper usage limit until the 1980's, and never provided a particle size limitation. These actions necessarily discouraged the employer from conducting any dust monitoring, provided the Respirator Defendant's masks and/or respirators were used.

9.     Employers are also required to establish safe work practices to be used in conjunction with selected respiratory protection, including selecting the appropriate masks and/or respirators for various activities. False or unsubstantiated claims made by the Respirator Defendant, as set forth above, left the employer unable to select the appropriate masks and/or respirators. Section 1910.134 requires that employers provide properly fitting approved masks and/or respirators for work around contaminants. However, the Respirator Defendant's masks and/or respirators only came in one-size, and the Respirator Defendant was aware that its masks and/or respirators could not fit everyone. Despite this knowledge, the Respirator Defendant still claimed that its masks and/or respirators fit, or could be formed to fit, all faces and sizes. Relying on the Respirator Defendant's misrepresentation, an employer would not believe it had to fit test masks and/or respirators that fit everyone. In addition, the fit of the Respirator Defendant's

-21-

masks and/or respirators could not be evaluated with suitable, practical or effective qualitative fit check or fit test or quantitative fit test. In effect, as a result of the Respirator Defendant's misrepresentations and inactions, the employer was left unable to comply with this part of the standard.

10.    The employer was also required to inform of the consequences of exposure. However, the Respirator Defendant's misrepresented that its masks and/or respirators fit everyone and could be used in any contaminant level, as long as employees wore the masks and/or respirators in the manner they were intended, and that there could not be exposure or subsequent consequences.

11.    The employer was also required to monitor work practices to assure that appropriate equipment was supplied, used and maintained. Once again, the employer would necessarily have to rely, at least in part, on the respirator manufacturer to help him select the appropriate masks and/or respirators, and provide instructions to assure that they were used properly. The Respirator Defendant's misrepresentations regarding its masks and/or respirators, as set forth above, defrauded employers and the users of the masks and/or respirators.

12.    Finally, the employer was required to periodically medically evaluate the workers. However, if the employer relied on the assurances of the Respirator Defendant that, by following the manufacturer's recommendations, the employee will not be over-exposed, the employer would be less likely to have the employee medically evaluated or would reduce the frequency of these evaluations.

13.    The information distributed to the public, the insulation and commercial industry, and to Plaintiff WILLIAM ANDERTON by the Respirator Defendant, contained material

-22-

misrepresentations and/or failed to disclose material facts. Such misrepresentations and concealment include, but are not limited to:

a. Falsely claiming that its masks and/or respirators offered protection against the inhalation of dusts, including asbestos dusts;

b. Falsely claiming that one-size-fits-all masks and/or respirators can provide protection against asbestos dusts for all users;

c. Falsely claiming that said masks and/or respirators provided a dust-tight seal;

d. Falsely claiming that the MSHA and NIOSH approval of said masks and/or respirators guaranteed end user utility and safety;

e. Falsely claiming that said masks and/or respirators passed NIOSH fit checks despite knowledge that NIOSH never evaluated the fit of the masks and/or respirators;

f. Falsely claiming that said masks and/or respirators had passed government fit tests despite knowledge that NIOSH never evaluated the effectiveness, reliability and safety of the fit checking or fit testing procedures as a condition of approval;

g. Falsely claiming that said masks and/or respirators had 99% efficiency against particles with a mean diameter of 0.4-0.6 microns;

h. Falsely claiming that said masks and/or respirators were high-efficiency;

i. Falsely claiming that said masks and/or respirators were designed and appropriate for use in high asbestos exposure areas;

-23-

j.   Falsely claiming that said masks and/or respirators stop pneumoconiosis and fibrosis dusts from ever reaching the lungs, were for use in thick choking dusts, could be used in high dust concentration jobs, and were efficient enough to filter out everything harmful to a worker's lungs;

k.   Falsely claiming that said masks and/or respirators could be used around any level of asbestos;

l.   Falsely promoting said masks and/or respirators as providing respiratory protection against all dust concentrations, fibrosis-producing dusts, toxic dusts and mists;

m.   Concealing limitations of said masks and/or respirators with respect to asbestos dusts;

n.   Concealing filter degradation from humidity, temperature and other environmental conditions; and

o.   Concealing test results which would have led to greater knowledge and awareness on the part of the mask and/or respirator user with respect to the masks' and/or respirators' limitations.

14.   The Respirator Defendant knew that such statements, information and representations were false, in and of themselves, and in light of the true facts which were concealed or failed to be disclosed.

15.   It was the purpose and intent of the Respirator Defendant in making these representations, and in failing to disclose the true facts, to deceive and defraud the public, including Plaintiff and Plaintiff's employer, to gain the confidence of the public, to falsely ensure

the quality and fitness for use of said masks and/or respirators and to induce the public to purchase and use said masks and/or respirators and remain brand-loyal.

16.     Plaintiff and Plaintiff's employer actually and reasonably relied upon the false statements, as well as the overall fraudulent message conveyed by the Respirator Defendant, and relied upon the omission of material facts, and was thereby induced to purchase and use the Respirator Defendant's masks and/or respirators, which in fact did not protect Plaintiff from asbestos exposure.

17.     At the time that the Respirator Defendant fraudulently misrepresented and concealed material facts, Plaintiff WILLIAM ANDERTON did not know the true facts about said masks and/or respirators which were misrepresented and concealed by the Respirator Defendant.

18..     As a proximate result of the Respirator Defendant's misconduct, Plaintiff WILLIAM ANDERTON developed mesothelioma; he endured rounds of debilitating cancer treatments and medical procedures; he experienced physical pain and suffering, mental anguish, emotional distress, loss of enjoyment of life, disabilities, and loss of bodily functions; he incurred medical expenses; and he suffered from any and all other damages associated with the diagnosis, treatment, and medical course of his cancer.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally, or in the alternative, for compensatory damages, punitive damages, pre- and post-judgment interest, and costs of suit as provided by law.

-25-

## NINTH COUNT
## NEGLIGENCE AND STRICT LIABILITY -FAILURE TO WARN
### (Respirator Defendant 3M COMPANY a/k/a MINNESOTA MINING & MANUFACTURING COMPANY only)

1.      Plaintiffs reiterate the facts and contentions as set forth above, and repeat them herein.

2.      That all times material hereto, the Respirator Defendant knew or should have known of the harmful effects of exposure to asbestos dust and fibers to human health, including the health of Plaintiff WILLIAM ANDERTON.

3.      At all times herein relevant, the Respirator Defendant had a duty to exercise reasonable care and caution for the safety of Plaintiff WILLIAM ANDERTON and others working with and around the Defendants' Products.

4.      Moreover, the Respirator Defendant had a duty to provide adequate warnings of all latent dangers of use of Defendant's masks and/or respirators, including the limitations of said masks and/or respirators with respect to their inability to protect users from asbestos dusts.

5.      The Respirator Defendant manufactured and marketed masks and/or respirators which the Respirator Defendant sold and distributed claiming said masks and/or respirators would protect workers from the dangers of breathing, inhaling and absorbing asbestos dusts.

6.      The Defendants negligently produced, sold, supplied or otherwise put into the stream of commerce Defendants' Products.

7.      Plaintiff WILLIAM ANDERTON used the Respirator Defendant's masks and/or respirators in the manner in which they were intended.

8.      Plaintiff WILLIAM ANDERTON did not know that his use of the Respirator Defendant's masks and/or respirators during his work with Defendants' Products would not protect him from airborne asbestos dust.

-26-

2786569.1

9.     In fact, the Respirator Defendant falsely represented that its masks and/or respirators were safe and provided protection against the inhalation of asbestos dusts.

10.     The Respirator Defendant knew or should have known that its masks and/or respirators were not adequate protection against asbestos fibers and their toxic, poisonous, and highly deleterious effect upon persons such as Plaintiff WILLIAM ANDERTON.

11.     Although the Respirator Defendant knew or reasonably should have known that its masks and/or respirators were inadequate to protect users from asbestos dusts and posed a highly harmful threat to Plaintiff's health, the Respirator Defendant was negligent in that it failed to exercise ordinary care and caution for the safety of Plaintiff WILLIAM ANDERTON in one or more of the following respects:

a.     Failed to provide any or adequate warnings to persons using its masks and/or respirators while working with and around Defendants' Products and their airborne dusts;

b.     Failed to advise or warn Plaintiff WILLIAM ANDERTON of the inadequacies and limitations inherent in its masks and/or respirators;

c.     Failed to provide any or adequate instructions concerning the methods of using said masks and/or respirators, including specific instructions on how to fit test and fit check the masks and/or respirators and the limitations of the masks and/or respirators as a protection against asbestos;

d.     Failed to place any warnings on the masks and/or respirators or their containers regarding the product's limitations and inadequacies in protecting users from the inhalation and/or absorption of harmful asbestos dusts;

-27-

e.    Failed to conduct tests on the masks and/or respirators with respect to asbestos dusts to determine the limitations of the masks and/or respirators for users;

f.    Designed, manufactured and sold masks and/or respirators that failed to adequately protect users from asbestos and other dusts.

g.    Failed to provide Plaintiff with the knowledge to protect himself from being harmed by exposure to Defendants' Products;

h.    Failed to take reasonable precautions or to exercise reasonable care to publish, adopt and enforce a safety plan, including fit check, fit test and efficiency tests for its masks and/or respirators.

12.    The lack of adequate warnings on the Respirator Defendant's masks and/or respirators or on their containers rendered the products defective and unreasonably dangerous.

13.    Plaintiff WILLIAM ANDERTON was exposed to Defendants' Products and their airborne dusts because of the inadequacy, defect, and unreasonably dangerous nature of the Respirator Defendant's masks and/or respirators.

14.    As a proximate result of the Respirator Defendant's misconduct, Plaintiff WILLIAM ANDERTON developed mesothelioma and suffered all damages as set forth above.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally, or in the alternative, for compensatory damages, punitive damages, pre- and post-judgment interest, and costs of suit as provided by law.

## TENTH COUNT
## STRICT PRODUCT LIABILITY- DEFECTIVE DESIGN
### (Respirator Defendant 3M COMPANY a/k/a MINNESOTA MINING & MANUFACTURING COMPANY only)

1.     Plaintiffs reiterate the facts and contentions as set forth above, and repeat them herein.

2.     The Respirator Defendant, while regularly engaged in the business activities aforementioned, did design, develop, manufacture, sell, market and distribute its masks and/or respirators, which were purchased by Plaintiff's employer and used by Plaintiff WILLIAM ANDERTON.

3.     The Respirator Defendant placed its inadequate masks and/or respirators on the market and knew or should have known they would be used without inspection for defects.

4.     The Respirator Defendant's masks and/or respirators were expected to reach and did reach the usual consumers, including Plaintiff WILLIAM ANDERTON, without substantial change in the condition in which they were designed, produced, manufactured, sold, distributed and marketed by the Respirator Defendant.

5.     The Respirator Defendant failed to design, develop, manufacture, sell, market and distribute its masks and/or respirators in such a manner as to render them safe for their intended and foreseeable uses by companies and users to which the Respirator Defendant marketed these products. By way of example and not limitation, the Respirator Defendant:

      a.     Failed to design, develop, manufacture and test its masks and/or respirators in such a manner as to render them safe for their intended and foreseeable users, when the Respirator Defendant knew or should have known that the foreseeable use of and intended purpose of its masks

-29-

and/or respirators was by persons, specifically Plaintiff WILLIAM ANDERTON, who worked with and around Defendants' Products;

b.    Marketed and sold said masks and/or respirators as sufficient respiratory protection against asbestos dusts while the same was in an unreasonably dangerous and defective condition, presenting a hazardous risk to Plaintiff's well-being;

c.    Failed to recall or attempt to repair the defective masks and/or respirators when the Respirator Defendant was and had been aware of the propensity of said products to injure Plaintiff;

6.    Moreover, when the Respirator Defendant's masks and/or respirators left the Respirator Defendant's possession and were placed on the market, the masks and/or respirators were defective in that:

a.    When used in the intended or reasonably foreseeable manner, the masks and/or respirators were not reasonably safe for their intended use;

b.    When used in the intended or reasonably foreseeable manner, the masks and/or respirators failed to perform as safely as would be expected by an ordinary user or consumer;

c.    When used in the intended or reasonably foreseeable manner, the masks and/or respirators caused a risk of harm beyond that which would be contemplated by the ordinary user or consumer.

7.    The Respirator Defendant knew that its masks and/or respirators were in a defective condition with respect to asbestos dusts and not reasonably safe for their marketed and intended use.

-30-

2786569.1

8.    With this knowledge, the Respirator Defendant voluntarily designed, manufactured and distributed its masks and/or respirators in a defective condition for use by the public and, in particular, by Plaintiff WILLIAM ANDERTON.

9.    As a direct and proximate result of using the Respirator Defendant's defective masks and/or respirators for the general purpose for which they were designed and intended, Plaintiff WILLIAM ANDERTON was overexposed to asbestos, contracted mesothelioma and suffered from other various diverse injuries and attendant complications.

10.    Accordingly, the Respirator Defendant is strictly liable to Plaintiff WILLIAM ANDERTON for defective design and manufacture, and/or marketing, distributing, supplying and selling a defective product.

11.    As a proximate result of the Respirator Defendant's misconduct, Plaintiff WILLIAM ANDERTON developed mesothelioma and suffered all damages as set forth above.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally, or in the alternative, for compensatory damages, punitive damages, pre- and post-judgment interest, and costs of suit as provided by law.

### ELEVENTH COUNT
### BREACH OF EXPRESS WARRANTY
### (Respirator Defendant 3M COMPANY a/k/a MINNESOTA MINING & MANUFACTURING COMPANY only)

1.    Plaintiffs reiterate the facts and contentions as set forth above, and repeat them herein.

2.    The Respirator Defendant affirmatively represented its masks and/or respirators to be safe and effective protection against asbestos dusts in its advertising, promotional and safety materials, and information disseminated to employers and end-users like Plaintiff WILLIAM ANDERTON.

-31-

3.      The Respirator Defendant promoted and marketed said masks and/or respirators as providing respiratory protection against asbestos dusts when the purported benefits were unfounded.

4.      The Respirator Defendant's promotional and safety materials and representations constitute affirmations, promises and descriptions, which became part of the basis of the bargain and created an express warranty that said masks and/or respirators should confirm to the Respirator Defendant's affirmations or promises.

5.      At the time that Plaintiff WILLIAM ANDERTON and Plaintiff's employer paid for said masks and/or respirators, the Respirator Defendant's express warranties were not true and said masks and/or respirators did not provide protection against asbestos dusts, were not safe, and were not reasonably suitable and fit for use around asbestos as advertising and represented by the Respirator Defendant.

6.      The foregoing statements, descriptions and misrepresentations caused Plaintiff to suffer ascertainable losses in that he and his employer purchased said masks and/or respirators without knowing the true and complete risks and benefits of said masks and/or respirators as they relate to providing protection against the inhalation, ingestion and absorption of asbestos dusts.

7.      Plaintiff WILLIAM ANDERTON would not have used said masks and/or respirators had Plaintiff known the true and complete risks inherent with said masks and/or respirators.

8.      As a proximate result of the Respirator Defendant's breach of express warranty, Plaintiff WILLIAM ANDERTON developed mesothelioma and suffered all damages as set forth above.

-32-

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally, or in the alternative, for compensatory damages, punitive damages, pre- and post-judgment interest, and costs of suit as provided by law.

### TWELFTH COUNT
### BREACH OF IMPLIED WARRANTY
### (Respirator Defendant 3M COMPANY a/k/a MINNESOTA MINING & MANUFACTURING COMPANY only)

1.    Plaintiffs reiterate the facts and contentions as set forth above, and repeat them herein.

2.    At all relevant times herein, the Respirator Defendant marketed, tested, manufactured, promoted, distributed and sold its masks and/or respirators for use by the public at large, including Plaintiff WILLIAM ANDERTON.  The Respirator Defendant knew the uses for which its masks and/or respirators were intended and impliedly warranted said products to be of merchantable quality, safe and fit for the uses the Respirator Defendant marketed.

3.    Plaintiff WILLIAM ANDERTON and Plaintiff's employer reasonably relied on the skill and judgment of the Respirator Defendant, and as such, the implied warranty in using the masks and/or respirators when working with or around asbestos dusts.

4.    Contrary to the implied warranty, said masks and/or respirators were not of merchantable quality or safe or fit for their intended use around asbestos dusts, which rendered the masks and/or respirators unreasonably dangerous and unfit for the purpose for which they were intended to be used.

5.    As a proximate result of the Respirator Defendant's breach of implied warranty, Plaintiff WILLIAM ANDERTON developed mesothelioma and suffered all damages as set forth above.

-33-

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally, or in the alternative, for compensatory damages, punitive damages, pre- and post-judgment interest, and costs of suit as provided by law.

### THIRTEENTH COUNT
### FRAUDULENT CONDUCT MALICE AND GROSS NEGLIGENCE
### (Respirator Defendant 3M COMPANY a/k/a MINNESOTA MINING & MANUFACTURING COMPANY only)

1.      Plaintiffs reiterate the facts and contentions as set forth above, and repeat them herein.

2.      The Respirator Defendant had a duty to refrain from gross negligence, fraud and/or malicious acts or omissions which would harm Plaintiff WILLIAM ANDERTON.

3.      The Respirator Defendant committed one or more of the following acts or omissions amounting to fraudulent misconduct, malice and gross negligence:

     a     Intentionally or with gross negligence for the safety of Plaintiff WILLIAM ANDERTON manufactured, sold and distributed masks and/or respirators inadequate to protect against airborne asbestos dusts, even though it was completely foreseeable and could or should have been anticipated that persons such as Plaintiff would wear the masks and/or respirators while working with or around airborne asbestos dusts;

     b.     Intentionally or with gross negligence for the safety of Plaintiff WILLIAM ANDERTON designed, manufactured, marketed, sold and distributed defective masks and/or respirators which were unreasonably dangerous when used in the manner for which they was marketed and intended to be used;

-34-

c.   Intentionally or with gross negligence for the safety of Plaintiff WILLIAM ANDERTON failed to provide any or adequate warnings to persons using its masks and/or respirators believing them to sufficiently protect against the inhalation, ingestion or absorption of asbestos fibers;

d.   Intentionally or with gross negligence for the safety of Plaintiff WILLIAM ANDERTON failed to provide any or adequate instructions concerning the limitations and inadequacies of its masks and/or respirators to protect against asbestos dust, including specific instructions on how to avoid using said masks and/or respirators while working with or around airborne asbestos dust;

e.   Intentionally or with gross negligence for the safety of Plaintiff WILLIAM ANDERTON failed to conduct tests to determine the limitations and inadequacies of its masks and/or respirators in protecting against the inhalation, ingestion and absorption of asbestos dusts in order to determine the hazards to which persons such as Plaintiff might be exposed while working with and around Defendants' Products;

f.   Intentionally or with gross negligence for the safety of Plaintiff WILLIAM ANDERTON failed to adequately label, warn, package, market or distribute its masks and/or respirators in a reasonable manner which would minimize or eliminate the penetration of asbestos dust fibers through the masks and/or respirators, thereby adding to the exposure of Plaintiff and others similarly situated; and

g.      Intentionally or with gross negligence for the safety of Plaintiff WILLIAM ANDERTON failed to take adequate steps to remedy the above failures including, but not limited to: (1) failure to recall the masks and/or respirators; (2) ongoing failure to conduct research to determine the masks' and/or respirators' limitations, capabilities and efficiency; and (3) failure to promptly remedy the inadequacies and shortcomings of the masks and/or respirators to or to warn the end user of same.

4.      As a direct and proximate result of one or more of the foregoing actions and/or omissions of the Respirator Defendant, Plaintiff WILLIAM ANDERTON was exposed to asbestos, contracted mesothelioma and has suffered injuries and damages as described herein despite his continued and proper use of the Respirator Defendant's masks and/or respirators, which Defendant claimed would protect Plaintiff against asbestos dust exposure.

5.      The Respirator Defendant's actions, as stated herein, constitute a flagrant disregard for the rights and safety of Plaintiff and by engaging in such actions, the Respirator Defendant acted with gross negligence, fraud, recklessness, willfulness, wantonness and/or malice and should be held liable in punitive and exemplary damages to Plaintiff WILLIAM ANDERTON.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally, or in the alternative, for compensatory damages, punitive damages, pre- and post-judgment interest, and costs of suit as provided by law.

-36-

2786569.1

## FOURTEENTH COUNT

1.     Plaintiff MARGIE ANDERTON repeats the prior allegations of this Complaint.

2.     Plaintiff MARGIE ANDERTON is the spouse of Plaintiff WILLIAM ANDERTON.

3.     As consequence of the injuries to her respective spouse, Plaintiff MARGIE ANDERTON has suffered loss of consortium, companionship, services, society and support.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally, and/or in the alternative for such damages, both compensatory and punitive, as may be permitted pursuant to the laws of the State of New Jersey, together with pre- and post-judgment interest thereon, costs of suit and attorney fees.

Plaintiffs hereby incorporate by reference all allegations set forth in the Standard Complaint, as amended, which is contained in the Asbestos Manual. A copy of the Asbestos Manual which contains the Standard Complaint can be obtained from the Middlesex County Mass Tort Clerk or by visiting the following website:


http://www.judiciary.state.nj.us/attorney/assets/mcl/asbestos/asbestos_amended_std_complaint.pdf

2786569.1

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury on all issues.

## DEMAND FOR ANSWERS TO INTERROGATORIES

Pursuant to the Asbestos Litigation General Order, Section VI.B. which can be found at http://www.njcourts.gov/attorneys/assets/mcl/asbestos/orders/generalorder1.pdf, Plaintiff hereby demand that the above listed Defendants answer Standard Interrogatories in the form prescribed by the Court and within the time provided by the above referenced Order.  A copy of the Standard Interrogatories are contained in the Asbestos Manual and may be obtained from the Clerk or by visiting the following website:

http://www.judiciary.state.nj.us/attorneys/assets/mcl/asbestos/asbestosmanual050306.pdf

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Robert Lytle, Esq. and Leah Kagan, Esq. are hereby designated as trial counsel in this matter.

2786569.1

## CERTIFICATION

I hereby certify that to my knowledge the within matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, and that no other action or arbitration proceeding is contemplated with the exception of a possible workers' compensation claim. I have no knowledge at this time of any non-party who should be joined in this action.

SZAFERMAN LAKIND BLUMSTEIN & BLADER, P.C.

By: _Robert E. Lytle /csm_
Robert Lytle
New Jersey Bar No. 046331990
101 Grovers Mill Road, Suite 200
Lawrence Township, NJ 08648
(609) 275-0400

And

SIMON GREENSTONE PANATIER, P.C.

By: _Joseph Mandia /csm_
Joseph Mandia
New Jersey Bar No. 016652008
Leah Kagan
New Jersey Bar No. 013602009
750 Third Avenue, Suite 976
New York, New York 10017
(212) 572-0774

Dated:  October 2, 2018

-39-